UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD W. ILLES, SR., M.D.
    Plaintiff

vs. : CIVIL NO. 1:12-CV-0395

DR. BARRY BEAVEN *et al.*,
    Defendants

*M E M O R A N D U M*

*I.    Introduction*

This matter involves the medical treatment Plaintiff, Richard Illes, Sr., M.D., received while temporarily housed at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"). Plaintiff brings claims for constitutional violations as well as state law medical malpractice and breach of confidentiality. Presently before the court are motions to dismiss the amended complaint filed by Defendants Dr. Christian Kcomt, Colleen Newfield, Sheila McGinnis, and Dr. David Underwood.

*II.    Background*

In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we must take all factual allegations in the complaint as true. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.

2008)). Plaintiff sets out the following facts in his complaint. Plaintiff, an inmate at the State Correctional Institution at Albion ("SCI-Albion"), was temporarily housed at SCI-Camp Hill from August 5, 2010 through August 31, 2010. Plaintiff had a history of severe degenerative joint disease and had been diagnosed with chronic pain syndrome, neuropathic pain, and chronic radiculopathy. The doctors at SCI-Albion treated these conditions with Celebrex, an anti-inflammatory agent, and Ultram, a pain medication. Plaintiff was also diagnosed with severe refractory depression for which he was being treated with Lexapro, an antidepressant. He was informed by a psychiatrist at SCI-Albion that he should take Lexapro for life. These three medications, Ultram, Celebrex, and Lexapro, are non-formulary, special order medications that required Plaintiff's physicians to state that they were absolutely necessary for Plaintiff, and that all other formulary medications could not be used because they were ineffective or caused serious side effects.

On August 6, 2010, Plaintiff was seen by Defendant Sheila McGinnis, a physician's assistant on staff at SCI-Camp Hill. McGinnis discontinued the Ultram and Celebrex and did not order any substitute pain medication. Plaintiff asserts that McGinnis did not perform any physical examination, review his medical records, or consult any of Plaintiff's regular treating physicians at SCI-Albion. Plaintiff explained to McGinnis that "all other formulary medications that could be used to treat his pain . . . had been found to be ineffective, and, or, had dangerous side-effects that precluded their use." (Doc. 57, ¶ 84). Dr. Underwood supervised McGinnis and co-signed her orders to

discontinue the Ultram and Celebrex without performing any exams or reviewing Plaintiff's medical records. As a result of the discontinuation of the pain medications, Plaintiff had increased pain in his back, neck, leg, and shoulders, was unable to sleep, and suffered a recurrence of his gastritis and peptic ulcer disease.

Plaintiff made multiple sick call requests for these medications and was seen by Defendant Newfield, a physician's assistant at SCI-Camp Hill, on August 12, 2010 and August 19, 2010. Newfield consulted with Plaintiff at his cell door, within earshot of other inmates. Newfield informed Plaintiff that the Celebrex and Ultram would not be ordered. Plaintiff requested other narcotic pain medication, steroid injections, or to see a physician, but these requests were also denied by Newfield.

Though Plaintiff does not give an exact date, at some point during his stay at SCI-Camp Hill, Defendant Kcomt discontinued Plaintiff's anti-depressant medication, Lexapro. Prior to the discontinuation, Dr. Kcomt did not examine or interview Plaintiff or review Plaintiff's psychiatric records. Later, Plaintiff informed Dr. Kcomt of his history of severe refractory depression and a suicide attempt. As a result of the discontinuation of Lexapro, Plaintiff suffered increased depression, anxiety, headaches, lethargy, insomnia, increased degenerative joint disease, and neuropathic pain. Plaintiff also alleges that Dr. Kcomt violated his duty of confidentiality by requiring Plaintiff to discuss at his cell door his history of depression, his suicide attempt, and his need for anti-depressant medication.

On January 9, 2010, Plaintiff filed the instant action in the Court of Common Pleas of Cumberland County, alleging medical malpractice, breach of confidentiality, and violation of the Eighth Amendment. Defendants removed the action on March 1, 2012. On March 8, 2012, Defendant Kcomt filed a motion to dismiss and for summary judgment. On May 7, 2012, Plaintiff filed a motion for summary judgment for his claims against Dr. Underwood. On July 10, 2012, we granted in part and denied Kcomt's motion and denied Plaintiff's motion for summary judgment. On July 20, 2012, Plaintiff filed an amended complaint. Presently before the court are two motions to dismiss filed by Defendants McGinnis, Newfield, Underwood, and Kcomt.

III.        Discussion

    A. Standard of Review

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation. Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

*B. Medical Malpractice Claim Against Underwood, Newfield, and McGinnis[1] (Count I)*

Defendants argue that Plaintiff fails to state a claim for medical malpractice. To establish a medical malpractice claim in Pennsylvania, a plaintiff must present an

---

[1] We note that Count II of Plaintiff's complaint alleges a medical malpractice claim against Defendant Kcomt. In our July 10, 2012 Memorandum and Order, we granted summary judgment on this claim in favor of Kcomt. (Doc. 53). Because a final judgment was rendered on this claim, Plaintiff is precluded from bringing it again. See Wolstein v. Docteroff, 133 F.3d 210, 214 (3d Cir. 1997) (finding a party may be estopped from relitigating an issue if "(1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."). We will strike all allegations of medical malpractice against Defendant Kcomt, including those contained in Count II of the amended complaint.

expert witness who will testify "to a reasonable degree of medical certainty, that the acts of the physician deviated from accepted medical standards, and that such deviation was the proximate cause of the harm suffered." Hakeem v. Salaam, 260 Fed. App'x 432, 434 (3d Cir. 2008) (nonprecedential) (citing Mitzelfelt v. Kamrin, 526 Pa. 54, 584 A.2d 888, 891 (Pa. 1990)).  An expert witness is not required "when the matter is so simple or the lack of care so obvious as to be within the range of experience and comprehension of non-professional persons." Id. (citing Hightower-Warren v. Silk, 548 Pa. 459, 698 A.2d 52, 54 n. 1 (Pa. 1997)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a medical malpractice complainant to file a certificate of merit within sixty days of filing the complaint.  See PA. R. CIV. P. 1042.3; Liggon-Redding v. Sugarman, 659 F.3d 258, 259 (3d Cir. 2011).  The certificate requires the plaintiff to attest to one of the following:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

PA. R. CIV. P. 1042.3(a).  The Third Circuit has found that the certificate of merit requirement is a substantive rule that must be applied in federal courts exercising diversity jurisdiction.  See Liggon-Redding, 659 F.3d at 264-65.  Here, Plaintiff filed his

own certificates of merit, indicating that expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claims against Defendants Underwood, Newfield, and McGinnis.

Defendants' sole argument is that without expert testimony, Plaintiff's medical malpractice claim fails and must be dismissed. Plaintiff contends that the matter is so simple and the lack of care is so obvious that it is within the realm of the jury's understanding without expert testimony. We find consideration of these arguments to be premature. See Liggon-Redding, 659 F.3d at 265 ("A filing under [rule 1042.3(a)(3)] allows the case to proceed to discovery, leaving the consequence of [Plaintiff's] decision to be dealt with at a later stage of the litigation, such as summary judgment or trial."). Thus, Defendants' motion to dismiss this claim will be denied.

*B. Constitutional Privacy and State Law Confidentiality (Count III)*

Plaintiff's complaint alleges that Defendants Kcomt and Newfield breached state law confidentiality requirements and his constitutional right to privacy. Specifically, he alleges that medical and psychiatric information was revealed to other inmates and non-medical staff when these Defendants consulted with him at his cell door.

*1. Constitutional Right to Privacy*

Defendants argue that Plaintiff has failed to state a claim for a violation of his constitutional right to privacy. "Inmates retain those rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the

7

corrections system." Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001). Among the rights retained is that of privacy of medical information, but not to the same extent as a free citizen. Id. This right "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." Id. To that end, "an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be reasonably related to legitimate penological interests." Id. (citation omitted). Legitimate penological interests include safety and practicability of accommodation. Smith v. Hayman, 2012 U.S. App. LEXIS 15322, *16 (3d Cir. 2012) (non-precedential).

The record is currently undeveloped regarding whether SCI-Camp Hill has a policy requiring doctors to consult patients at their cell doors and the interests such a policy serves. Thus, we find analysis of this claim to be premature and will deny Defendants' motion to dismiss.

### 2. State Law Breach of Confidentiality Claim

In addition to his constitutional claim, Plaintiff alleges that Defendants violated state law by disclosing his confidential information. Defendants Newfield and Kcomt assert that Plaintiff fails to state a cognizable claim. The Pennsylvania Superior Court has found "in *some* cases a civil claim for a physician's breach of confidentiality is cognizable." Haddad v. Gopal, 2001 Pa Super 317, 787 A.2d 975, 980 (Pa. Super. 2001) (emphasis added); see also Grimminger v. Maitra, 2005 Pa Super 374, 887 A.2d 276, 279 (Pa. Super. 2005) (interpreting Haddad to "to limit the types of diagnoses

8

protected by the privilege statute to those that expose confidential information to third parties *and which blacken a patient's character*") (citation omitted) (emphasis added). One Pennsylvania court found "a patient may recover damages for injuries sustained from his or her psychiatrist's unauthorized disclosure of confidential information regarding the patient." Ulizzi v. Trellis, 20 Pa. D. & C. 4th 300, 303 (Pa. Ct. Comm. Pl. 1993); see also Lujan v. Mansmann, 956 F. Supp. 1218 (E.D. Pa. 1997) (recognizing claim for breach of confidentiality against psychiatrist-defendant).

Plaintiff alleges that Defendant Kcomt "disclosed Plaintiff's need for psychiatric medications, his previous suicide attempt, his mental hospital admission, and his depression to non-medical correctional staff members and inmates within earshot." (Doc. 57, ¶ 64). He also asserts that Defendant Newfield "disclosed Plaintiff's medical history of arthritis, sciatica, neck pain, back pain, and the need for the narcotic Ultram to control his pain," and that "Plaintiff's cell mate and inmates in surrounding cells heard [this disclosure]."[2] (Id. at ¶ ¶ 65, 70). These Defendants consulted with Plaintiff at his cell door, despite having the ability to do so privately in their offices. (Id. at ¶ 75).

We agree with Defendant Newfield that the discussion with Plaintiff regarding his various medical conditions that cause pain are not the type of communications previously protected under Pennsylvania state law. See Grimminger,

---

[2] Defendant Newfield argues that the complaint fails to allege that she initiated the conversation about Plaintiff's medical issues. However, it alleges that Newfield disclosed confidential information. When construed liberally, as a *pro se* complaint should be, we find this sufficient to state a claim. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

2005 Pa Super 374, 887 A.2d at 279 (finding the privilege to extend to communications which would "blacken the character of the patient"). Although some Pennsylvania courts have found that conversations regarding mental health issues may be protected, the facts in those cases are easily distinguished from the present case.[3] Plaintiff fails to provide legal support that such a privilege applies to a doctor's consultation with a prisoner at a cell door. Without such support, we will not extend the state law doctrine to apply to the present set of facts.

### 3. Confidentiality Pursuant to 55 Pa. Code § 5100.32

Plaintiff alleges that Defendant Kcomt's discussion at his cell door violates 55 Pa. Code § 5100.32. This statute applies "to records of persons seeking, receiving or having received mental health services from any facility as defined in section 103 of the act (50 P.S. § 7103)." 55 Pa. Code § 5100.31. In our July 10, 2012 Memorandum, we determined that Plaintiff did not meet the requirements to seek relief under 50 P.S. § 7103. Thus, 55 Pa. Code § 5100.32 has no application to Plaintiff or the present action.

### D. Eighth Amendment Claim (Count IV)

Moving Defendants argue that Plaintiff's Eighth Amendment claim should be dismissed for failure to state a claim. In this claim, Plaintiff alleges that Defendants knew of his degenerative joint disease, chronic pain syndrome, sciatica, neuropathy,

---

[3] In Ulizzi v. Trellis, the plaintiff's psychiatrist provided confidential information to defense counsel in the form of an expert report. 20 Pa. D. & C. 4th 300, 303 (Pa. Ct. Comm. Pl. 1993). The court found that the psychiatrist could be liable under these circumstances. Id.

radiculopathy, and depression and discontinued his medications without a physical exam.

To bring an Eighth Amendment claim, a plaintiff must show that prison officials were deliberately indifferent to a serious medical need. White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990). To state a claim for deliberate indifference, a plaintiff must allege "more than mere malpractice or disagreement with a particular course of treatment." Merrit v. Fogel, 349 Fed. App'x 742, 746 (3d Cir. 2009). Deliberate indifference requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citation omitted). The Third Circuit has found deliberate indifference "where a prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Id.

*1. Defendants McGinnis, Newfield, and Underwood*

Plaintiff arrived at SCI-Camp Hill on August 5, 2010. On August 6, 2010, Plaintiff was seen by McGinnis, who made the decision to discontinue the use of Ultram and Celebrex. Upon making sick call requests for these medications on August 12, 2010 and August 19, 2010, Plaintiff was seen by Newfield. On August 30, 2010, McGinnis again attempted to see Plaintiff, but Plaintiff was not at his cell door when she arrived.

Defendants contend that Plaintiff has not alleged sufficient facts to establish that they were deliberately indifferent. Allegations of negligence or medical malpractice are insufficient to state a claim. Rouser, 182 F.3d at 197. To rise to the level of a constitutional violation, a more culpable state of mind is required. Id. Plaintiff argues that he has alleged deliberate indifference, because these Defendants ignored the express orders of his prior physicians. However, Plaintiff's complaint does not allege that his physicians at SCI-Albion ordered the *exclusive* use of Celebrex and Ultram or required these medications to be provided to Plaintiff in the future. Instead, it alleges that these medications were prescribed because all medications on the Department of Correction's formulary list were found to be ineffective or to have dangerous side effects.[4]

Plaintiff was seen on multiple occasions by physician's assistants at SCI-Camp Hill. He was provided medical treatment, but disagrees with the decision to discontinue specific medications. Plaintiff must allege more than mere negligence or

---

[4] We note the distinction between the facts in the present case and those set forth in White v. Napoleon, a case Plaintiff offers in support of his argument. 897 F.2d 103 (3d Cir. 1990). There, the Third Circuit found that a prisoner's allegations that a prison physician attempted treatments previously found to be ineffective and painful for the sole purpose of inflicting pain upon the prisoner were sufficient to state a claim of deliberate indifference. Id. at 110-11. Another prisoner in the case was found to state a claim when he alleged that his prior physician prescribed a medication and expressly stated there should be "no substitutions," but his subsequent physician ordered the use of a different medication for no apparent reason. Id. Here, Plaintiff has not alleged that his prior physicians ordered the exclusive use of Ultram and Celebrex or that Defendants discontinued these medications for the sole purpose of causing Plaintiff pain.

disagreement with a particular course of treatment to state a constitutional violation. See Merrit, 349 Fed. App'x at 746. The allegations in the complaint do not raise an inference that these Defendants acted with deliberate indifference. "Considerable latitude is given to prison medical authorities in the diagnosis and treatment of patients," and we find that these allegations fail to rise to the level of a constitutional violation. Rodriguez v. Sec'y Pa. Dept. of Corr., 441 Fed. App'x 919, 921 (3d Cir. 2011).

### 2. *Defendant Kcomt*

Plaintiff alleges that Kcomt discontinued his Lexapro without examining or interviewing Plaintiff or reviewing his medical records. At some point during his stay at SCI-Camp Hill, Kcomt met with Plaintiff. Plaintiff explained his history of a suicide attempt, severe refractory depression, and multiple adverse effects of all other anti-depressant medications, but Kcomt still refused to prescribe Lexapro. Plaintiff alleges that Kcomt "deliberately interferred [sic] with the treatment prescribed by a psychiatrist who was most familiar with his psychiatric problems." (Doc. 57, ¶ 60).

As with the other Defendants, Plaintiff received medical care from Kcomt, but takes issue with Defendant's failure to prescribe a specific medication. The allegations in Plaintiff's complaint fail to rise to the level of a constitutional violation. See Merrit, 349 Fed. App'x at 746. Thus, we will dismiss Plaintiff's Eighth Amendment claim against Kcomt.

*E. Punitive Damages*

Defendant Kcomt seeks to dismiss Plaintiff's allegations of recklessness and request for punitive damages. The only remaining claim against Defendant Kcomt is for his alleged violation of Plaintiff's constitutional right to privacy. Punitive damages may be awarded when a defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000).

Plaintiff alleges that the violation of his privacy was "deliberate and done with reckless disregard for the Plaintiff's well being." (Doc. 57, ¶ 73). The only facts he alleges to support this bald assertion is that Defendant Kcomt consulted with him at his cell door within earshot of other inmates and non-medical staff. We agree that Plaintiff has failed to allege sufficient facts support his claim for punitive damages and it will be dismissed.

*E. Plaintiff's Request for an Injunction*

Defendant Kcomt argues that Plaintiff's request for a preliminary injunction should be dismissed. A preliminary injunction is an extraordinary remedy that is not granted as a matter of right. Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982). To obtain a preliminary injunction, Plaintiff must demonstrate a reasonable likelihood of success on the merits and that he will be irreparably harmed if the injunction is not granted. See Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998) ("Federal Rule of Civil Procedure 65 permits a court to grant a preliminary injunction if the moving party

demonstrates a likelihood of success in the litigation, and that he will suffer great or irreparable injury absent an injunction."). Courts weigh the following factors in determining whether to issue a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits;
> (2) whether the movant will be irreparably injured by denial of the relief;
> (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and
> (4) whether granting the preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994). 18 U.S.C. § 3626 further limits the court's ability to issue preliminary injunctions. The statute provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity.

18 U.S.C. § 3626(a)(2). "Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution." Abraham v. Danberg, 322 Fed. App'x 169, 170 (3d Cir. 2009) (nonprecedential) (citation omitted).

Plaintiff has not demonstrated that he would be irreparably injured by denial of the injunction. As the Third Circuit explains, "more than a *risk* of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a

15

clear showing of immediate irreparable injury." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980) (citation omitted) (emphasis added). Plaintiff alleges that "hearings and a trial are inevitable . . . in the near future" and he will need to be housed at SCI-Camp Hill. (Doc. 57, ¶ 101). This is insufficient to show the risk of *immediate* irreparable injury.

IV. *Conclusion*

We will grant Defendant Kcomt's motion to strike Count II of Plaintiff's complaint alleging medical malpractice. The state law breach of confidentiality claims in Count III will be dismissed, but the constitutional privacy claim will remain. The deliberate indifference claim in Count IV will be dismissed as to all moving Defendants. We will deny the motion to dismiss Count I. Leave to amend will be denied as futile. See Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002).

/s/William W. Caldwell
William W. Caldwell
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD W. ILLES, SR., M.D. :
    Plaintiff :
:
vs. : CIVIL NO. 1:12-CV-0395
:
DR. BARRY BEAVEN et al., :
    Defendants :
:
:

*O R D E R*

AND NOW, this 10th day of December, 2012, upon consideration of Defendants' motions to dismiss (docs. 62, 69), and Plaintiff's response thereto, and pursuant to the accompanying Memorandum, it is ordered that:

    1. Defendants' motion to dismiss Count I of Plaintiff's complaint is DENIED.

    2. Defendant Kcomt's motion to strike Count II of Plaintiff's complaint is GRANTED.

    3. Defendants' motions to dismiss Count III of Plaintiff's complaint are GRANTED in part and DENIED in part. Plaintiff's state law breach of confidentiality claims are dismissed with prejudice as to all Defendants.

    4. Defendants' motions to dismiss Count IV of Plaintiff's complaint are GRANTED. This count is dismissed with prejudice.

5. Defendant Kcomt's motion to dismiss Plaintiff's request for punitive damages and injunctive relief is GRANTED.

/s/William W. Caldwell
William W. Caldwell
United States District Judge